**LAW OFFICES OF DENNIS RASMUSSEN**
**DENNIS RASMUSSEN (CA SBN 153479)**
680 E. Colorado Blvd. Suite 180, 2nd Floor
Pasadena, CA 91101
Phone: (626) 412-4055
Email: dennisrasmussen@realestatelawcenter.org
Attorney for Plaintiff,
Raul Montoya Sr.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA EASTERN DIVISION**

| | |
|---|---|
| RAUL MONTOYA, SR.<br><br>Plaintiff<br><br>vs.<br><br>FCI LENDER SERVICES, INC.., and DOES 1-100, Inclusive,<br>Defendants | CASE NO.: 5:25-cv-01732KK (DTBx)<br><br>Assigned to the Hon. Kenly Kiya Kato<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>**1. FRAUD**<br>**2. STATUTORY VIOLATIONS**<br>**3. NEGLIGENCE**<br>**4. VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTIONS 17200, et seq.** |

Plaintiff RAUL MONTOYA, SR., individual, herein alleges as follows:

## GENERAL ALLEGATIONS

1. Plaintiff RAUL MONTOYA, SR., individual, hereinafter MONTOYA, is, and at all times relevant was, *sui juris* and the rightful and lawful owner of that certain real property

located in the County of San Bernardino, State of California, and commonly known as: 6964 Montego Street, Chino, CA 91710, the ("subject Property").

2. Defendant, FCI LENDER SERVICES, INC., hereinafter referred to as "FCI" was at all times relevant to this action a CORPORATION organized under the Laws of the State of California, with a principal place of business at 8180 E Kaiser Blvd., Anaheim, CA 92808. At all times relevant in this action, FCI purported to be authorized to conduct business within the State of California and, in fact, conducted business within the County of San Bernardino, on a regular basis. This Defendant has registered with the Secretary of State of California that its agent for service of process is Michael W. Griffith, 8180 E. Kaiser Blvd., Anaheim Hills, CA 92808.

3. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 100, inclusive, and therefore sue these Defendants and all unknown persons claiming any legal or equitable right, title, estate, lien or interest in the Subject Property adverse to Plaintiff' title, or any cloud on Plaintiff' title thereto, by such fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities when ascertained.

4. Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned the Defendant sued herein was the agent, employee, partner, co-conspirator, successor or predecessor in interest and employer of the remaining Defendants and, in doing the things herein alleged, were acting within the purpose and scope of such agency, employment and/or conspiracy. Plaintiff is further informed and believes and based thereon alleges that the acts and conduct herein alleged of each such Defendant were known to, authorized by and/or ratified by the other Defendants, and each of them.

5. Whenever in this Complaint an act or omission of a corporate or business entity is alleged, said allegation shall be deemed to mean and include an allegation that the corporate or business entity acted or omitted to act through its authorized officers, directors, agents, servants and/or employees, acting within the course and scope of their duties, that the act or omission was authorized by managerial officers or directors of the corporate or business entity, and that the act or omission was ratified by the officers and directors of the corporate or business entity.

## CONSPIRING OFFICERS, EMPLOYEES AND AGENTS OF DEFENDANTS

6. Defendant aided and abetted, encouraged and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiff as alleged herein. In taking action to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings, each of the Defendants acted with an awareness of its primary wrongdoing and realized its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals and wrongdoing.

7. Defendant knowingly and willfully conspired, engaged in a common enterprise and engaged in a common course of conduct to accomplish the wrongs complained of herein. The purpose and effect of the conspiracy, common enterprise and common course of conduct complained of was, inter alia, to financially benefit Defendant at the expense of Plaintiff by engaging in wrongful and fraudulent activities. Defendants accomplished their conspiracy, common enterprise and common course of conduct by misrepresenting and concealing material information regarding the servicing of loans and by taking steps and making statements in furtherance of their wrongdoing. Each Defendant was a direct, necessary and substantial participant in the conspiracy, common enterprise and common course of conduct complained of and was aware of its overall contribution to and furtherance thereof. Defendants' wrongful

conduct acts include, inter alia, all of the acts that each of them is alleged to have committed in furtherance of the wrongful conduct complained of herein.

## JURISDICTION AND VENUE

8. Pursuant to Code of Civil Procedure Section 392(a), venue is proper in this County because the Subject Property is located here. Further, the transactions occurred within this County, the events transpired within this County, the parties and witnesses reside within this County, the evidence, including Defendants' business records, are located within this County, and the Defendants regularly conduct business within this County.

9. Defendant engaged in business within the State of California related to the events which give rise to the instant lawsuit. The subject events transpired within the State of California, FCI corresponded with Plaintiff via mail with addresses within the State of California, hence FCI has "sufficient minimum contacts" with the State of California such that this Court's exercise of personal jurisdiction over FCI "[does] not offend traditional notions of fair play and substantial justice."[1]

10. FCI's refusal to comply with California foreclosure statutes creates liability on its part. Its breach of duty to Plaintiff under these circumstances is evidence that Plaintiff has a strong probability of prevailing on the merits. Plaintiff argues that the Defendants have purposefully short-circuited the California Foreclosure statutes, due process rights, and fair play to assess Plaintiff for available foreclosure options so as to have an unimpeded path to foreclosure.

---

[1] *International Shoe Co. v. Washington*, 1 326 U.S. 310, 316 (1945).

## FACTUAL BACKGROUND

11. This action arises out of loan activity related to Plaintiff's home. Plaintiff has at all relevant times been the rightful owner of the Subject Property.

12. In 2009, Plaintiff had been negatively impacted by the Great Recession and real estate collapse, and ultimately had to file a Chapter 7 Bankruptcy. At this same time in 2009, the then servicer, up to and including SN, concealed its identity. The abrupt cessation of any billing or collection efforts was commonplace with second mortgages at this time, leading to major changes in the mortgage industry, HAMP being one example. The abandonment of billing on this loan during the 2009 foreclosure frenzy led Plaintiff into a false sense of security, believing his second mortgage was among the many being abandoned.

13. Surprisingly, in the last week of November 2020, Plaintiff heard for the first time about his second mortgage after 12 years of silence, when he received a letter dated November 25, 2020, stating that servicing had been transferred to FCI. Stunned, Plaintiff tried to investigate the status of this loan after all these years, going back to 2009. Plaintiff learned nothing until he received his second communication from FCI on this loan, a Notice of Default (NOD) that had been recorded on April 29, 2021. The NOD asked for $140,794.00, an impossible amount for the then 74-year-old Plaintiff to be able to provide. Each week that passed, Plaintiff's stress and panic grew over the aggressive foreclosure by FCI.

14. At the age of 74, FCI was aware that Plaintiff had little to no earning ability, indicating a bleak prospect for obtaining credit. It knew that the recording of an NOD would make it all but impossible for Plaintiff to refinance, which is evidence that FCI had no intention

to make a fair arrangement with Plaintiff to save his home, as is the public policy of the State of California.

15. On August 2, 2021 FCI caused a Notice of Trustee's Sale (NOTS) to be recorded. Thursday, July 29, 2021, marked the 90th day of the NOD time period, and Monday, August 2, 2021, was the earliest opportunity for FCI to record a NOTS. This is evidence that FCI was intent on pressuring Plaintiff as much as the law would allow. Sticking to foreclosure timelines to the exact day gives Plaintiff no reasonable opportunity to negotiate any pathway to avoid foreclosure. FCI knew SN, and any prior servicers had concealed their identities for 12 years, which conduct had served Plaintiff up on a silver platter for FCI to pull the rug out from underneath Plaintiff.

16. The oppressive treatment of "Zombie" second mortgages (second mortgages who rise from the dead after a decade or more of no communication, leading borrowers to believe the mortgage was extinct) is what has motivated the California legislature to adopt Civil Code section 2924.13, to help victims of years of concealment, just like Plaintiff. In July 2021, knowing a NOTS was about to be recorded, Plaintiff requested a payoff in desperation to find any rescue. On July 11, 2021 FCI gave Plaintiff a payoff in the amount of $216,746.00. Plaintiff tried to find a solution to his imminent foreclosure; however, the August 2, 2021, NOTS created unbearable pressure.

17. FCI used the pressure they applied to squeeze Plaintiff into having no choice but to accept a loan modification at a 9.5% interest rate, on a balance of $99,472.00, with $76,524 deferred to the end of the loan so long as Plaintiff did not default. These high-interest monthly payments were calculated to arrive at a monthly mortgage of $846.00 with a balloon payment

due in 15 years. Plaintiff had no choice but to sign the modification on August 14, 2021 with a Trustee's Sale date set for August 31, two weeks away.

18. In the month of August 2021, interest rates would have been in the range of approximately 2.8% to 3.1%. This was during the period of time when rates had plummeted in 2020 and 2021 in response to the Coronavirus pandemic and by July 2020, the 30-year fixed rate fell below 3% for the first time. Second mortgage rates in August, 2021 were from 3.5% to 5.5%. Thus, FCI's insistence on a 9.5% interest rate, almost three times the market rate for Plaintiff's modification, is strong evidence that it never had any intention other than to take Plaintiff by surprise and enjoy the lucrative profit of foreclosure or stretch him over a barrel for three times the market interest rate.

19. Any interest rate above 10% APR on real estate-secured loans would have been considered usurious in August 2021. FCI insisted on a 9.5% interest rate in its dealings with the financially unsophisticated, 74-year-old Plaintiff. In 2021, during the peak of elderly deaths from Covid, the foreclosure was an inescapable squeeze play. Plaintiff had no choice but to sign the offered modification that could have been addressed much more easily during the 12 years of concealment by SN, and others, whom FCI successfully protected by getting plaintiff to agree to its oppressive and overreaching modification.

20. On August 14, 2021, Plaintiff signed the modification and paid the $10,000.00 down payment to FCI that it demanded. Buried in the 14-page single-spaced legalese modification contract, on page 10, paragraph No. 35 was a release paragraph of claims of usurious interest rates, and No. 36 was a general release of any and all claims as of the date of signing.

21. Plaintiff could not read and understand any of the document, especially these two release paragraphs. FCI gave no explanation to Plaintiff. FCI did not advise Plaintiff to take the document to an attorney or realtor to seek an understanding of what he was signing. The key legal concept in California is that contracts must be signed freely, without coercion, duress, or undue influence, and voluntarily, of the person's own will and choice. This standard ensures that contracts are entered into with genuine consent and understanding, which is fundamental to contract validity in California. Based upon the pressure applied by FCI and Plaintiff's limited knowledge of business terms and ability to read and understand complex legal documents, the modification was not signed freely and voluntarily.

**<u>FIRST CAUSE OF ACTION</u>**

**CONCEALMENT FRAUD**

**(Against FCI)**

22. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though such have been fully set forth herein.

23. Under California Civil Code Section 1709 and 1710 it is unlawful for any party to use false important facts to convince a victim to rely on the false facts, and that the reliance was reasonable and caused harm. Section 1710 sets the elements of deceit as:

1) the suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

2) the assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true;

3) The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or,

4) A promise, made without any intention of performing it.

24. FCI's actions by forthwith recording a Notice of Default and then on the first business date after the 90-day NOD period, recording a Notice of Trustee's Sale, were to create fear and undue influence in Plaintiff. This fear and strong influence pressured the vulnerable Plaintiff to sign the modification, accepting the outrageous interest rate of 9.5%. FCI forced Plaintiff to enter into its modification contract without freely and voluntarily consenting to the contract. FCI assertion that 9.5% was a fair and reasonable rate was fraudulent. FCI made no consideration for the 12 years of concealment that prevented Plaintiff from paying down or paying off the loan prior to 2021.

25. The Plaintiff was unaware of the reality that market interest rates were 1/3 of what FCI demanded, and that FCI protected the prior servicers of this Zombie mortgage, over his interest in saving his home at a fair and reasonable price. Plaintiff would not have acted as he did, and entered into the modification if he knew of the concealed facts and the misrepresented fairness of the interest rate.

26. Plaintiff claims he is justified in having his legal right to the delayed discovery doctrine to defeat a statute of limitations argument to the three-year statute for fraud.
The law in California states that material terms buried in dense, technical language or fine print, allow Plaintiff to assert his claim of delayed discovery. In 2025, Plaintiff had the modification read and explained to him, which was when he first realized he had been defrauded by FCI's suggestion that a 9.5% interest rate was appropriate for second mortgage modifications. Plaintiff

also learned that FCI was covering up the concealment of SN and any prior servicers so the second would be an easy foreclosure of a Zombie mortgage.

27. Moreover, delayed discovery is allowed when conditions occur that trigger understanding that a wrong was committed. The releases were buried in complex legal language, the awareness of the releases was triggered by the information divulged in this litigation. Thus, the complaint survives any statute of limitations argument. Plaintiff exercised reasonable diligence given the circumstances of being forced to sign or lose his home, as he had no opportunity to know of the release in his modification and the overcharged interest rate.

28. As a result of the concealment and false representations, Plaintiff has sustained damages. Accordingly, as a result of FCI's deceitful and fraudulent conduct, Plaintiff has suffered compensatory, general, and special damages in an amount to be determined according to proof. Additionally, FCI acted with malice, fraud and/or oppression, thus, Plaintiff is entitled to an award of punitive damages.

## SECOND CAUSE OF ACTION

### STATUTORY VIOLATIONS OF 12 C.F.R. 1024.33(b)(3), 12 C.F.R. 1026.41

### (Against FCI)

29. Plaintiff incorporates herein by this reference each and every allegation set forth above, as though fully set forth herein.

30. 12 C.F.R. 1026.41 requires a loan servicer to send periodic statements to consumer credit transactions secured by a dwelling. FCI knew when it received the loan records from SN that no prior contact, collection or periodic billing had occurred with Plaintiff from 2009 until FCI contacted Plaintiff in 2021. FCI prevented Plaintiff from receiving compensation

for the unfair running up of arrears of the loan account, and prevented the mitigation of damages. FCI prevented Plaintiff from knowing the true status of his loan account, including that it even still existed and had been accruing late payment charges and interest from 2009, creating such large arrears that foreclosure would be certain and unavoidable.

31. As a direct, foreseeable, and proximate result of FCI's cover up of SN and others breach of these statutes, Plaintiff has suffered monetary damages, including, but not limited to, unreasonable mortgage arrears, being prevented from reducing the principal of the loan, out of pocket expenses and legal and attorneys' fees to bring and maintain the instant lawsuit. Plaintiff has suffered, and will continue to suffer, general and special damages in an amount according to proof at trial.

**THIRD CAUSE OF ACTION**

**NEGLIGENCE**

**(Against FCI)**

32. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though such have been fully set forth herein.

33. The elements of a cause of action for negligence are well established. They are (a) a legal duty to use due care; (b) a breach of such legal duty; (c) the breach as the proximate or legal cause of the resulting injury. (*Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 917 [50 Cal.Rptr.2d 309, 911 P.2d 496]). Under California Evidence Code section 669 the failure of a person to exercise due care is presumed if a statute, ordinance or regulation of a public entity is violated.

34. 12 C.F.R. 1026.41 requires a loan servicer to send periodic statements to consumers of credit transactions secured by a dwelling. FCI took over servicing on or about

November, 2022, and did not send even one periodic statement to Plaintiff. This resulted in Plaintiff not being kept apprised of the existence and status of his loan account prior to foreclosure, all to his prejudice and financial damage.

35. FCI's failure to adequately follow these federal statutes is a want of care and/or a departure from ordinary standard conduct, and constitutes Negligence under California Evidence Code section 669 .

36. Plaintiff has suffered monetary damages, including, but not limited to, increased arrears, out-of-pocket expenses, and legal and attorneys' fees to bring and maintain the instant lawsuit. Plaintiff has suffered, and will continue to suffer, general and special damages in an amount according to proof at trial.

**<u>FOURTH CAUSE OF ACTION</u>**
**VIOLATION OF BUSINESS AND**
**PROFESSIONS CODE SECTIONS 17200, *et seq*.**
**(Against FCI)**

37. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though such have been fully set forth herein.

38. California Business & Professions Code Section 17200, et seq., also known as California's Unfair Competition Law (hereinafter the "UCL") prohibits acts of fraudulent, unlawful, or unfair business competition. Any fraudulent business acts or practices are likely to deceive and are fraudulent within the meaning of the UCL. Any unlawful business acts or practices are those in violations of some underlying law within the meaning of the UCL. Any unfair business acts or practices are those that threaten a violation of antitrust law.

39. A "violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong." *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (1999). "In effect, the UCL borrows violations of other laws…and makes those unlawful practices actionable under the UCL." *Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494, 1505 (1999). In addition, a claim for UCL stands or falls depending on the fate of antecedent substantive causes of action. *Krantz v. BT Visual Images*, 89 Cal. App. 4th 164, 178 (2001).

40. "Unfair" conduct under the UCL has been commonly defined as conduct that "offends an established public policy or…is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Scripps Clinic v. Superior Court*, 108 Cal. App. 4th 917, 939 (2003). When "determining whether the challenged conduct is unfair within the meaning of the unfair competition law…courts may not apply purely subjective notions of fairness." *Id.* at 941; see also *Cell-Tech Comms. V. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999).

41. FCI's actions appear to be predatory in nature. FCI initiated contact after a significant lapse of time. FCI attempted to exploit the Plaintiff's lack of awareness regarding the status of the debt by demanding an inflated amount of interest on the second mortgage. FCI's aggressive approach placed undue pressure on the Plaintiff, forcing him into a position where he had to accept unfavorable loan modification terms to avoid losing his home.

42. Specifically, as fully set forth herein, FCI engaged in deceptive business practices with respect to mortgage loan servicing, exploitative lending practices, assignments of notes and deeds of trust, and attempt to foreclosure a residential property and related matters by, among other things:

a) Instituting improper or premature foreclosure proceedings to generate unwarranted fees ("dual tracking," not conducting a proper review, etc.);

b) Executing and recording false and misleading documents;

c) Executing and recording documents without the legal authority to do so;

d) Misrepresenting the status of the loan account and the status of any foreclosure and foreclosure prevention processes;

e) Violating the 2MP requirements of the MHA program; and

f) Other deceptive business practices.

43. Plaintiff alleges that by engaging in the acts and/or practices as alleged herein, Defendant has violated several California laws and regulations and said predicated acts are, therefore, per se, violations of California Business and Professions Code Section 17200, et seq.

44. The foregoing acts and practices of failing to bill for years, then demand payment in full, and then record foreclosure documents to prevent any payment of their demands, are not only an unfair business practice, but are also designed to cause substantial harm to California consumers.

45. Plaintiff alleges that, as a direct and proximate result of the aforementioned acts, FCI has prospered and benefited from Plaintiff by collecting arrears, late fees, and fees for foreclosure related services, and have been unjustly enriched from their act of failing to collect and bill Plaintiff for an unknown period of time prior to foreclosure.

46. Further, Plaintiff alleges that Defendant's misconduct gave and has given it an unlawful and unfair competitive advantage over its competitors to the detriment of the homeowners. The scheme implemented by Defendant is designed to defraud California consumers, including Plaintiff, and to enrich Defendant.

47. By reason of the foregoing, Defendant has been unjustly enriched and should be required to disgorge its illicit profits and/or make restitution to Plaintiff and other California

consumers who have been harmed and/or enjoined from continuing in such practices pursuant to California Business & Professions Code Sections 17203 and 17204. Additionally, Plaintiff is therefore entitled to injunctive relief and attorney's fees as available under California Business & Professions Code Section 17200 and related sections.

**WHEREFORE**, Plaintiff prays for Judgment and Order against Defendant as follows:

1. A temporary restraining order, a preliminary injunction, and a permanent injunction, all enjoining Defendant and their agents, attorneys, and representatives, and all persons acting in concert or participating with them, from selling, attempting to sell, or causing to be sold Plaintiff' home, either under the power of sale in the deed of trust or by foreclosure action;
2. For the compensatory damages in an amount within the jurisdiction of this court, plus interest, according to proof;
3. For an award of punitive and exemplary damages in an amount according to proof at the time of trial;
4. For the disgorgement of all funds taken from Plaintiff and any profits thereafter derived through use of such funds;
5. For general damages in an amount not less than according to proof at the time of trial;
6. For prejudgment interest on all damages awarded under Civil Code Section 3287(a);
7. For costs of suit including reasonable attorneys' fees; and
8. For such other and further relief as the court may deem proper.

9. For an order compelling Defendants to remove any instrument, including the Notice of Default and Notice of Trustee's Sales.

10. For the Court to issue an order restraining Defendant, its agents, or employees from continuing or initiating any action against the Property and enjoining Defendants, its agents, or employees from doing so during the pendency of this matter.

Dated: August 17, 2025

LAW OFFICES OF DENNIS RASMUSSEN

/s/Dennis Rasmussen
Dennis Rasmussen, Esq., Attorney for Plaintiff

# PROOF OF SERVICE

Case # 5:22-CV-01732LL (DTBx)

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 680 East Colorado Blvd., Suite 180, 2nd Floor, Pasadena, CA 91101.

On August 18, 2025, I served the following document(s):

**FIRST AMENDED COMPLAINT** on the interested parties in this action:

By transmitting via electronic mail the document listed above to the email address provided by counsel:

**Name and address of Counsel :**
**Rachel Wichter**
**Crystle Lindsey**
**GHIDOTTI BERGER**
**1920 Old Tustin Avenue**
**Santa Ana, CA 92705**

[ X ] VIA ELECTRONIC FILING: The documents were filed electronically via this court's CM/ECF system (U.S. District Court, Central District of California Local Civil Rule, 5-3.3) . Accordingly, service was made by virtue of a Notice of Electronic Filing ("NEF") generated automatically upon the filing of the document and transmitted to the email addresses of all counsel of record who have consented to electronic service. By the terms of the court's rules governing electronic, filing, service of the documents is deemed complete upon the transmission of the NEF.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct. Executed on

Executed on August 18, 2025, at Pasadena, California.

/s/ Mary Rosendale